IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HENRY WRIGHT,**

       **Petitioner,**

**v.**                                    **Civil Action No. 5:18cv35**
                                               **(Judge Stamp)**

**WARDEN ENTZEL,**

       **Respondent.**

## REPORT AND RECOMMENDATION

On March 1, 2018, the *pro se* petitioner, Henry Wright, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The petitioner is currently incarcerated at FCI Beckley but was incarcerated at FCI Hazelton when he filed this case. In the petition, the petitioner challenges the decision of the United States Parole Commission ("Commission") to depart 58 months above the re-parole guideline range. The petitioner paid the $5.00 filing fee on March 1, 2018. On March 2, 2018, Magistrate Judge James E. Seibert conducted a preliminary review of this matter and determined that summary dismissal of the same was not warranted. Accordingly, an Order to Show Cause was entered. On April 6, 2018, the respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On April 9, 2018, a Roseboro Notice was issued, and on May 2, 2018 the petitioner filed a response.

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2, is ripe for review.

## I.  FACTUAL AND PROCEDURAL HISTORY

On March 3, 1993, the petitioner was sentenced to an aggregate 20-year sentence by the Superior Court for the District of Columbia following his guilty plea to two counts of robbery and one count of assault with a dangerous weapon. ECF No. 10-3 at 1-2. On February 17, 1995, the petitioner was released on parole by the D.C. Board of Parole. Id. at 11. He was to remain under supervision within the limits of the Washington Metro Area until September 1, 2012, unless or until other action was taken by the D.C. Board of Parole. Id.

On August 19, 1997, the D.C. Board revoked the petitioner's parole based on new criminal violations. ECF No. 10-3 at 12. The petitioner was again released on parole on August 13, 1999, to remain under supervision within the limits of the Washington Metropolitan are until October 31, 2014, unless and until other action was taken by the D. C. Board of Parole.   Id.

On January 25, 2001, following a revocation hearing, the Commission revoked the petitioner's parole. ECF No. 10-3 at 18. The petitioner was re-paroled on August 20, 2004, to remain under parole supervision through October 28, 2016. Id. at 21.

On January 13, 2006, pursuant to his advanced consent to expedited revocation, the Commission again revoked the petitioner's parole. ECF No 10-3 at 24. The petitioner was re-paroled on November 24, 2006, to remain under supervision through September 1, 2016. Id. at 27.

On January 2, 2009, the Commission issued a violator warrant based on charges of failure to submit to drug testing, use of a dangerous and habit forming drugs, failure to

report to supervising officer as directed, failure to report change in residence, and assault. ECF No. 10-3 at 31. On February 12, 2009, the Commission revoked the Petitioner's parole. Id. at 34. On May 14, 2010, the petitioner was again released on parole with a full term date of October 20, 2018. ECF No. 10-4 at 1.

On March 28, 2011, the petitioner's supervision officer requested a warrant based on his January 24, 2011 arrest for attempted murder, assault-first degree, and assault-second degree in Prince Georges County, Maryland. ECF No. 10-4 at 4-5. The petitioner was convicted in the Circuit Court of Prince Georges County, Maryland of assault second degree and dangerous weapon openly with intent to injure and was sentenced on October 7, 2011, to 13 years of imprisonment. ECF No. 10-4 at 26-28. The Commission supplemented the charges on the violator's warrant to reflect the conviction. Id. at 29. On April 29, 2013, the Circuit Court's judgment was reversed by the Court of Special Appeals. ECF No. 10-4 at 35. At his trial following remand, the petitioner was found guilty of second degree misdemeanor assault and sentenced to ten years imprisonment. Id. at 33. On February 2, 2015, the court granted the petitioner's motion for reconsideration and reduced his sentence to eight years imprisonment with credit for four years and 20 days to be followed by five years probation upon release. Id. at 38.

On August 7, 2017, the petitioner completed his sentence in Maryland and was taken into custody on the Commissioner's violator warrant. ECF No. 10-4 at 40. A revocation hearing was conducted on November 17, 2015. The petitioner appeared in person and with counsel. Id. at 41. At the hearing, the petitioner told the hearing examiner that he cut his wife and her daughter while he was using a knife to defend himself. Id. The

3

hearing examiner determined that given that the victim required stitches and staples this incident was a category five offense of assault. Id. at 42. With a Salient Factor Score of 1, the guidelines indicated that the petitioner should serve 60-72 months before being re-paroled. However, the hearing examiner found that the petitioner was a more serious parole risk than established by the guidelines because he "stabbed his wife and her daughter with knife which required stitches. Assaulted wife previously in 2009 and [he] continue[d] to engage in criminal activity upon release." Id. at 43. Accordingly, the hearing examiner recommended that the petitioner's parole be revoked with no credit for time on parole, and he continue incarceration until the expiration of his sentence. The hearing examiner estimated that the petitioner would serve another 129 months approximately. Id. In a memorandum dated December 1, 2015, the Case Operations Administrator agreed with the examiner's recommendation to continue to expiration and recommended the Commission include the following reasons for a decision above the guidelines:

> [Y]ou are a more serious risk than indicated by the guidelines in that your repetitive violent criminal conduct that has not been deterred by prior periods of confinement or parole supervision. Your base offense that resulted in the current parole violator term resulted from criminal conduct that occurred in August 1992 in which you robbed a female victim after forcing her to take her clothes off. At the time you committed that offense, you had already been convicted once previously for assault.
>
> After originally receiving a 20 year sentence from the District of Columbia, you have been given the opportunity for parole/re-parole on five separate occasions. Three of your four previous revocations of parole resulted from new criminal behavior. Two of these were for assault. One involved your involvement in an assault committed with a knife in February of 2000. The other involved an assault on your wife in November of 2008.
>
> Despite repeated opportunities at parole supervision, your current violation behavior involved another assault on the same victim at your last period of

4

> parole. The commission finds that you are likely to continue to commit assaultive crimes and that you are not a suitable candidate to release prior to expiration of your term

ECF No. 10-4 at 44. The Commission adopted the examiner's and reviewer's recommendations and reasons in an order dated December 18, 2015. ECF No. 10-4 at 45.

Thereafter, the petitioner, by counsel, filed a Notice of Appeal. The appeal alleged that the Commission's decision to depart above the re-parole guideline range was an abuse of discretion because the decision amounted to double counting. The appeal further alleged that the decision was not supported by the facts of the case. ECF No. 10-4 at 51-54. The National Appeals Board affirmed the Commissioner's decision finding as follows:

> The National Appeals Board finds that the Commission did not engage in double counting and the decision was supported by the facts of the case because the salient factor score only takes into account numbers of prior conviction, not the nature of those conviction. Your history of violence, including assaultive conduct, while on parole shows that there is a "reasonable probability that [you] will not live and remain at liberty without violating the law and that "[your] release is incompatible with the welfare of society," the criteria for parole under the D.C. parole statute.

ECF No. 10-4 at 55.

Following the petitioner's statutory interim hearing on November 3, 2017, the Commission ordered no change in the previous decision. ECF No. 10-4 at 57. The petitioner has been scheduled for a statutory interim hearing during November 2019. Id. Unless the petitioner is sooner paroled, his projected release date is October 25, 2021. See bop.gov/inmateloc.

## II.  CLAIMS OF PETITION

Consistent with his Notice of Appeal, the petitioner alleges that the Commission

double counted conduct and considered acquitted conduct when imposing an above guidelines sentence for his most recent parole violation. The petitioner details this allegations by arguing that the Commission used the facts of his original offense and prior violation conduct to calculate his Salient score which resulted in a range of 60-72 months and then used this same conduct to justify an upward departure. In addition, the petitioner refers to a Rule 35(b) motion that the DC Superior Court allegedly dismissed for lack of jurisdiction with leave to pursue the same in this Court. The petitioner argues that his maximum time in custody on the original charge would have expired in 2012, almost six years ago.  For relief, the petitioner seeks a correction and/or reduction in his sentence.

### III.  RESPONSE

In support of his Motion to Dismiss or, in the alternative Motion for summary judgment, the respondent argues that D.C. offenders have no due process right to re-parole. In addition, he maintains that this Court does not have jurisdiction to review the Commissioner's decision on its merits. Finally, he maintains that the Commissioner's decision to depart from the guidelines was warranted in the petitioner's situation.

### IV. REPLY

In his reply, the petitioner again argues that the Commission engaged in impermissible double counting. He also notes that he filed an untimely Rule 35(b) motion when he discovered that his attorney did not filed the request for a sentence reduction with the D.C. Superior Court as requested. The petitioner maintains that the D.C. Superior Court left open the option for the Northern District of West Virginia to decide this issue. The petitioner then notes that he now has been continuously incarcerated for 7.5 years, and for

the first time in his incarceration, he has been very proactive in his rehabilitation.

## V.   LEGAL STANDARD

### A.   Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative

level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v.

Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986.

## V.  ANALYSIS

### A. Parole

At one time, there existed a "Board of Parole....for the penal and correctional institutions of the District of Columbia," D.C. Code § 24-401.01(a) (2001), which determined an offender's suitability for parole. In 1997, Congress overhauled the District of Columbia's government, including the parole system through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). The Revitalization Act abolished the D.C. Board of Parole, and the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole.  Accordingly, since August 5, 1998, the Commission has

9

conducted the hearings and decided the requests for parole of all persons convicted of violating the D.C. Code.[1]

Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law. See Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979). Courts have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they were transferred to the jurisdiction of the Commission, does not create any liberty interest in parole. See, *e.g.*, McRae v. Hyman, 667 A.2d 1356 (D.C. 1995) (The District's parole scheme confers discretion to grant or deny parole and the scoring system creates no liberty interest overriding the exercise of that discretion); Ellis v. District of Columbia, 84 F.3d 1413 (D.C.Cir. 1996) (D.C. parole statute and regulations do not create any liberty interest in parole.) Furthermore, Congress committed decisions to grant or deny parole to the absolute, unreviewable discretion of the Commission. Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981). Parole decisions are therefore not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedures Act, 5 U.S.C. § 701(a)(2). Rather, judicial review is limited to a consideration of whether the Commission "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations. Garcia at 988; see also Fardella v. Garrison, 698 F.2d 208, 210 (4th Cir. 1982).

---

[1] Effective August 5, 2000, the USPC also was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2). This is why the petitioner's hearings, beginning with the hearing on January 25, 2001, have been conducted by the Commission.

In the instant case, there is no dispute that the Commission revoked the petitioner's parole after he was released from incarceration following expiration of his Maryland sentence. Nor is there a dispute that the Commission chose to exceed the guideline range of 60-72 months to be served based on his salient factor score[2] of 1 and an offense severity rating of five. The petitioner does not contest the Commission's computation of either his Salient Factor Score or offense severity. Instead, the petitioner's claim is that the Commission engaged in double counting by considering his violation behavior and his criminal history to determine both his guideline range and justify its decision to continue him to the expiration of his sentence, a period of approximately 58 months above the top end of the guideline range.

Double counting occurs when the Commission, in making a parole decision, relies upon a factor to determine the applicable parole guideline range and then relies upon the same factor to depart from the guideline range. See Romano v. Baer, 805 F.2d 268, 271 (1986) (use of aggravating factors to continue prisoner beyond the guidelines when such factors were used to place prisoner in a particular severity category constitutes an abuse of discretion) Delong v. Snyder, 2008 WL 4510583 at (E.D.N.C. Sept. 29, 2008) (double counting occurs when the Commission used the same criteria to establish both the parole guidelines and to justify a departure from those guidelines); Kingsbury v. Fulwood, 902

---

[2]The salient factor score is determined by the following factors: (1) the number of prior convictions/adjudications; (2) the number of prior commitments of more than 30 days; (3) the inmate's age at commencement of the current offense/prior commitment of more than 30 days; (4) the length of recent commitment free period; (5) whether the inmate was on probation/parole/confinement/escape status at the time of the current offense; and (6) whether the inmate was 41 years of age or more at the commencement of the current offense.

F.Supp.2d 51, 50 (same).

In the instant case, the petitioner incorrectly asserts that the Commission engaged in double counting by considering the facts of his original offense and prior violation conduct to calculate the salient factor score and used those same factors to apply an upward departure. Conduct that was part of the petitioner's offense, but was not necessary to assess the guideline range, including the salient factor score, may be used as a basis to depart from the guidelines without engaging in double counting. Thomas v. Brennan, 962 F.2d 612, 620 (7th Cir. 1992) (Commission may consider the nature of the offense as an aggravating factor even if the offense has been used to calculate the guideline range); Solomon v. Elsea, 676 F.2d 282, 287 (7th Cir. 1982) (upholding Commission's decision to depart from the guidelines where the Commission used "extenuating circumstances of the particular offense," and the  nature of the violation categorizing the prisoner in the guidelines, to make up the necessary good cause); Maddox v. U.S. Parole Comm'n, 821 F.2d 997, 1001 (5th Cir. 1987) (nature of crimes as grounds for upward departure); Stroud v. U.S. Parole Comm'n, 668 F.2f 843, 847 (5th Cir.1982) (no double counting because salient factor score focuses on the number of prior convictions, and Commission's basis for exceeding the parole guidelines was the nature of those convictions); Mason v. U.S. Parile Comm'n, 768 A..2d 591, 593 (D.C. 2001) (upholding five-year set-off and finding that the Commission did not double-count because the point score relies upon the number of prior convictions, but does not account for the degree of violence in any particular incident).

Here, the petitioner's original 20 years sentence in the District of Columbia was for a 1992 robbery. As explained in the Notice of Action dated December 18, 2015, the

petitioner was given the opportunity for parole/re-parole on five separate occasions, and three of his four previous revocations of parole resulted from new criminal behavior. Two of those were for assault, including one for assault with a knife.  His current violation is yet another assault. Although the petitioner's salient factor took into account his prior convictions, it did not reflect his pattern of violent episodes. Hawkins v. U.S. Parole Commission, 511 F.Supp. 460, 462-63 (E.D.Va. 1981), quoting Grimes v. Garrison, CA No. 80-0420-R (E.D. Va. 1981), aff'd mem., 679 F.2d 881 (4th Cir. 1982) ("the nature and chronology of an offense may be taken into account to justify a decision above the guidelines even though the offense was counted in a determination of . . .the salient factor score.").

To reiterate, parole actions are subject to review only to determine whether the Commission violated the Constitution, its enabling statute, or parole regulations. Garcia v. Neagle, 660 F.2d 983 (4th Cir. 1981).  For the reasons stated above, the decision to revoke the petitioner's parole and continue him to the expiration of his sentence does  not constitute any such violation.

**B. Rule 35(b)**[3]

On July 26, 2017, the petitioner filed a Motion in the Superior Court of the District of Columbia seeking permission to file an untimely Rule 35(b). On October 10, 2017, the United States filed a response which argued that although styled as a Rule 35(b) motion

---

[3]The respondent did not address this matter in its Motion to Dismiss or for Summary Judgment. In an effort to obtain the necessary information to address the same, the pro se law clerk assigned to this case contacted the Clerk's office of the Criminal Division of the Superior Court of the District of Columbia and obtained photocopies of the documents described in this section.

to reduce sentence, the petitioner actually appeared to be challenging the Commission's calculation of the parole violator sentence the Commission imposed for the violation of his parole.[4] Therefore, the United States argued that because the petitioner was challenging the calculation and execution of his sentence, and not the legality of his conviction and sentence, the motion was properly construed as a petition for writ of habeas corpus. Because the petitioner was incarcerated in West Virginia, the United States maintained that the Superior Court of the District of Columbia lacked subject matter and personal jurisdiction and should dismiss the habeas petition without prejudice to the refiling of the petition in the United States District Court for the Northern District of West Virginia. On October 25, 2017, the Superior Court construed the petitioner's Motion as a Petition for Writ of Habeas Corpus and ordered that the same be dismissed without prejudice to filing the same with this Court.

This Report and Recommendation has already addressed the merits of this habeas petition as it pertains to the Commission's decision to exceed the guidelines range for re-parole and continue the petitioner's incarceration until his original 20 year expires. To the extent that the petitioner believes that his Rule 35(b) motion was dismissed for lack of jurisdiction, and he was directed to address the issue with this Court, he is clearly mistaken. In fact, in it's Motion to Dismiss filed in the Superior Court, the United States specifically argued that if the "court construes the [petitioner's] motion as properly falling under Rule 35(b) , the Court should summarily deny the motion, because it was filed more than 120

---

[4]It is unclear to the undersigned why the United States took that position. The petitioner clearly alleges that in 1993, he asked his attorney to file a sentence reduction, and he said he would. He therefore requested an order to permit him to file an untimely Rule 35(b) motion.

days after the [petitioner] was sentenced, and because the government objects to the defendant's untimely filing, or the Court should deny the [petitioner's] motion summarily, because it is without merit."

This Court clearly does not have jurisdiction over a motion to reduce a sentence pursuant to Rule 35(b) of the Criminal Rules of the District of Columbia Superior Court. Nor has the petitioner made any allegation that would satisfy the four prong savings clause established by the Fourth Circuit in United States v. Wheeler, 886 F.3d 415 (4th Cir. 2018), *reh'g en banc denied* June 11, 2018. Accordingly, to the extent the petition is seeking a reduction is his sentence pursuant to Rule 35(b), the same should be dismissed for lack of jurisdiction.

## VI.  RECOMMENDATION.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 10] be **GRANTED**, and the Petition [ECF No. 1] be **DENIED** and **DISMISSED WITH PREJUDICE** to the extent that it challenges the decision of the Commission. The undersigned further recommends that the Petition [ECF No.1] be **DENIED** and **DISMISSED WITHOUT PREJUDICE** to the extent that it seeks relief under Rule 35(b) of the Criminal Rules of the District of Columbia Superior Court.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any  objections shall also be submitted to the Honorable Frederick

15

P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

Upon entry of this Report and Recommendation, the Clerk of Court is further **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: January 29, 2019

*/s James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE